[L. A. No. 22991. In Bank. June 25, 1954.]

LIVINGSTON ROCK AND GRAVEL COMPANY (a Corporation) et al., Respondents, v. COUNTY OF LOS ANGELES, Appellant.

Harold W. Kennedy, County Counsel, and Edward H. Gaylord, Deputy County Counsel, for Appellant.

Denio, Hart, Taubman & Simpson for Respondents.

SPENCE, J.—Plaintiffs sought to enjoin the county of Los Angeles from enforcing against them certain zoning ordinance provisions which would prohibit them from conducting a cement mixing plant in a rezoned district. They recovered judgment upon the premise that the ordinance provisions in question could not be constitutionally applied to require the removal of their existing business as a nonconforming use, and therefore "any action purportedly taken under . . . such provisions [was] invalid and [had] no effect as to . . . plaintiffs." Defendant challenges the propriety of this judgment on these grounds: (1) the ordinance provisions are not constitutionally objectionable in application to plaintiffs' business; and (2) plaintiffs' remedy is by writ of certiorari or mandamus, precluding injunctive or declaratory relief. Settled principles of law sustain defendant's position.

The Pacific Electric Railway Company owned a parcel of land in an area in Los Angeles County known as the Artesia Industrial District. The area was used exclusively for industrial and manufacturing purposes. Over Pacific Electric's land there passed a main double track railway line with two separate spur tracks to serve the neighboring commercial and industrial plants. On January 31, 1950, Pacific Electric leased 20,000 square feet of its land to plaintiffs. At that time all of this area was in an M-3 zone (unlimited), under ordinance No. 1494 (new series) of the county of Los Angeles, permitting any building structure or improvement to be

erected, established or maintained thereon without restriction as to use or occupancy.

Plaintiffs erected on the leased property a batching plant for the loading of readymix concrete mixer trucks with concrete aggregates, a use then permissible in any M-3 zone in the county. The plant was erected pursuant to a building permit issued by the county building department and was completed prior to March 21, 1950. Plaintiffs complied with all the smog control and air pollution ordinances of the county, and they secured a permit authorizing the operation of their plant and certifying that after inspection, it had been found to be complying with these requirements. The plant cost $18,000 to build; $80,000 worth of mixer trucks were purchased; and both the plant and 'trucks have been in continuous operation.

On March 21, 1950, after the erection and operation of the plant and purchase of the trucks, the county adopted an urgency ordinance (No. 5508) rezoning the Artesia Industrial District into an M-1 zone (light manufacturing). Upon such rezoning, existing uses were protected as automatic exceptions (§ 531) with such structure as plaintiffs' plant allowed 20 years for continued use unless such time period should be extended or the automatic exception should be revoked as provided in the amending ordinance. Section 533 provided for the revocation of an automatic exception "if the [Regional Planning] Commission finds: (a) That the condition of the improvements, if any, on the property are such that to require the property to be used only for those uses permitted in the zone where it is located would not impair the constitutional rights of any person; (b) That the nature of the improvements are such that they can be altered so as to be used in conformity with the uses permitted in the zone in which such property is located without impairing the constitutional rights of any person." Section 649, as here material, authorized the planning commission, after a public hearing as therein provided, to "revoke or modify any permit, exception or other approval which has been granted either automatically or by special action of either the Board of Supervisors or the Commission, pursuant to . . . the provisions of [the] ordinance [where] (e) . . . the use for which the approval was granted is so exercised as to be detrimental to the public health or safety, or so as to be a nuisance."

On November 25, 1950, plaintiffs received a notice through the mail that a hearing would be held December 1, 1950,

before the Regional Planning Commission with reference to the revocation of their exception. Pacific Electric, owner of the property, was never given notice of the hearing. Following the scheduled public hearing and on December 6, 1950, the planning commission notified plaintiffs that their "use of the property with a cement batching plant thereon" was "being exercised in such a manner as to be detrimental to public health, and so as to be a nuisance"; and that their right to operate their plant was therefore revoked "effective as of January 31st, 1952." On January 16, 1951, plaintiffs appealed to the county board of supervisors, which affirmed the planning commission's decision. In August, 1951, the board added to the basic zoning ordinance (No. 1494) section 404 of ordinance No. 5800, expressly confirming the expiration date on plaintiffs' exception as "January 31, 1952." Thereafter plaintiffs brought this action seeking (1) to enjoin defendant county from "interfering with" the operations of the cement batching plant "after January 31, 1952" and (2) to have the court "declare the rights and duties of plaintiffs and defendant with respect to the property and batching plant . . . and determine the construction and validity of the purported action taken by [the] Regional Planning Commission . . ."

Defendant admitted in its answer that its proceedings against plaintiffs were not taken under the provisions of section 3491 of the Civil Code relating to the abatement of a public nuisance but rather were instituted under authority of sections 533 and 649 of the zoning ordinance, *supra*, providing for the "revocation of automatic exceptions." The trial court determined that these sections, as well as section 404, *supra*, affirming the expiration date on plaintiffs' exception, were "invalid" in permitting "unconstitutional encroachments" upon plaintiffs' property rights and therefore "any action . . . taken" by the Regional Planning Commission "under . . . such provisions [was] invalid and [would] have no effect as to . . . plaintiffs." Upon such premise the court expressly refrained from making "any findings as to what occurred at the hearing before the Regional Planning Commission on December 1, 1950, or whether or not there was any competent evidence at said hearing to prove any cause for revocation." Plaintiffs accordingly were granted the injunctive relief sought. Defendants attack the propriety of such judgment upon the merits as well as upon the procedural phases.

It is well settled that zoning ordinances, when reasonable in object and not arbitrary in operation, constitute a justifiable exercise of the police power. (*Miller* v. *Board of Public Works,* 195 Cal. 477, 487 [234 P. 381, 38 A.L.R. 1479] ; *Acker* v. *Baldwin,* 18 Cal.2d 341, 344 [115 P.2d 455] ; *Wilkins* v. *City of San Bernardino,* 29 Cal.2d 332, 337 [171 P.2d 542].) Plaintiffs concede the general validity of the zoning ordinance here as a whole but they contend that the rezoning amendment may not be constitutionally applied to require the removal of their existing business from the rezoned district. They maintain that their unlimited right to operate their cement batching plant in the district, a lawful use of the property as originally zoned, could not be curtailed or limited by subsequent rezoning without violating the constitutional guarantee of due process of law. They rely on *Jones* v. *City of Los Angeles,* 211 Cal. 304 [295 P. 14], wherein the court refused to apply retroactively, so as to destroy a valuable sanatorium business, an ordinance which prohibited such institutions in areas rezoned as residential. Under the particular circumstances of that case, showing "substantial injury" to be involved (p. 321), it was deemed unreasonable and arbitrary to destroy the established enterprise. . But each case must be determined on its own facts. (*Cf. Beverly Oil Co.* v. *City of Los Angeles,* 40 Cal.2d 552, 560 [254 P.2d 865].)

Moreover, the ordinance under consideration in the Jones case differed materially from the one here involved. There the ordinance, cast in the form of a penal statute rather than in the form of a comprehensive zoning law, prohibited the maintenance of sanitariums of a certain type in designated districts. By its terms the ordinance, unlike the ordinary zoning laws, purported to have both a retroactive as well as a prospective effect, thereby automatically prohibiting the continued maintenance of several established sanitariums representing large investments. In other words, no provision was made for any automatic exception for existing nonconforming uses. In the present case, the zoning ordinance does provide for automatic exceptions of reasonable duration for existing nonconforming uses, subject, however, to earlier revocation of the automatic exception if the use for which approval was granted is so exercised "as to be detrimental to the public health or safety, or so as to be a nuisance" (§ 649, *supra*) ; and the power to determine, upon notice, the question of whether the property was being so used was

vested in the Regional Planning Commission. As a result of these distinctions, plaintiffs may not urge that the remedy of injunction which was sought in the Jones case is the appropriate remedy in the present case. It is apparent that the only remedy available to plaintiffs in the Jones case was preventive, by way of an action for injunctive relief; whereas, as will hereinafter appear, other remedies were available in the present case to review the action taken by the planning commission in revoking plaintiffs' automatic exception.

██ The rights of the users of property as those rights existed under prevailing zoning conditions are well recognized and have always been protected. (*Edmonds* v. *County of Los Angeles,* 40 Cal.2d 642, 651 [255 P.2d 772].) ██ Accordingly, a provision which exempts existing nonconforming uses is ordinarily included in rezoning ordinances because of the hardship and doubtful constitutionality of compelling the immediate discontinuance of nonconforming uses. (*Ibid.*) Protection of an undertaking involving the investment of capital is akin to the protection of a nonconforming use existing at the time that rezoning conditions become effective. (*County of San Diego* v. *McClurken,* 37 Cal.2d 683, 691 [234 P.2d 972].) ██ However, zoning legislation looks to the future in regulating district development and the eventual liquidation of nonconforming uses within a prescribed period commensurate with the investment involved. (*Ibid.* p. 686.) The mere fact that some hardship may thereby be experienced is not controlling, for "every exercise of the police power is apt to affect adversely the property interest of somebody." (*Zahn* v. *Board of Public Works,* 195 Cal. 497, 512 [234 P. 388].) ██ Implicit in the theory of the police power, as differentiated from the power of eminent domain, is the principle that incidental injury to an individual will not prevent its operation, once it is shown to be exercised for proper purposes of public health, safety, morals, and general welfare, and there is no arbitrary and unreasonable application in the particular case. (*Wilkins* v. *City of San Bernardino, supra,* 29 Cal.2d 332, 338; *Beverly Oil Co.* v. *City of Los Angeles, supra,* 40 Cal.2d 552, 557.)

██ Here the rezoning permits plaintiffs to continue their nonconforming use of the property for 20 years as an "automatic exception" to the rezoning restrictions (§ 531, *supra; Edmonds* v. *County of Los Angeles, supra,* 40 Cal.2d 642, 651) but authorizes revocation of such exception where it

can be done without the impairment of "constitutional rights" (§ 533, *supra*). Manifestly, care has been taken in such rezoning regulations to refrain from the interference with constitutional guarantees, and in the light of such express language it would be a contradiction in terms to hold that the regulations are nevertheless unconstitutional. █ Likewise, there can be no constitutional objection to the authorized revocation by the planning commission of an automatic exception where after a public hearing, upon notice, it is found that the nonconforming use is "so exercised as to be detrimental to the public health or safety, or so as to be a nuisance." (§ 649, *supra*; *Ricciardi* v. *County of Los Angeles*, 115 Cal. App.2d 569, 577 [252 P.2d 773].) Revocation of the right to continue a previously existing lawful business because of such finding would be a legitimate exercise of the police power. (*Ex parte Quong Wo*, 161 Cal. 220, 230 [118 P. 714]; *Jones* v. *City of Los Angeles, supra*, 211 Cal. 304, 316; *In re Jones*, 56 Cal.App.2d 658, 663-664 [133 P.2d 418]; *Cantrell* v. *Board of Supervisors*, 87 Cal.App.2d 471, 477 [197 P.2d 218].) It therefore follows that the rezoning regulations authorizing the revocation of "automatic exceptions" are constitutionally valid as a whole and come within the prescribed objectives of the police power. There now remains the question of whether in application to plaintiffs' existing cement plant there has been an unconstitutional impairment of property rights.

The Regional Planning Commission was a local board exercising quasi-judicial powers under the ordinance in determining the facts in plaintiffs' case. (*Greif* v. *Dullea*, 66 Cal. App.2d 986, 1009 [153 P.2d 581]; *North Side etc. Assn.* v. *Hillside etc. Park*, 70 Cal.App.2d 609, 616 [161 P.2d 618]; *Cantrell* v. *Board of Supervisors, supra*, 87 Cal.App.2d 471, 475.) █ Either certiorari or mandamus is an appropriate remedy to test the proper exercise of discretion vested in a local board. (*Walker* v. *City of San Gabriel*, 20 Cal.2d 879, 881 [129 P.2d 349, 142 A.L.R. 1383]; *La Prade* v. *Department of Water & Power*, 27 Cal.2d 47, 53 [162 P.2d 13].) █ Under such review, the chief issues are whether the person affected has been accorded a hearing, and if so, whether there is any evidence to support the order of the local board. (*Ibid.*)

█ In the present case, the transcript of the hearing before the planning commission is not a part of the record. Plaintiffs allege that there was "no competent evidence to

prove any cause for revocation" in their case, and that Pacific Electric, owner of the property, was never given notice of the hearing as required by the ordinance regulations. In answer to this latter point, defendant asserts that "Pacific Electric . . . was represented at the hearing," a voluntary appearance which eliminates any cause for complaint in failing to give the required notice (see *Hopkins* v. *MacCulloch*, 35 Cal.App.2d 442, 451 [95 P.2d 950]), and that in any event the presence of Pacific Electric was of no concern to plaintiffs in the determination of their case before the planning commission. Although plaintiffs admittedly did comply with smog and air pollution regulatory requirements, their plant might be still so operated "as to be detrimental to the public health or safety, or so as to be a nuisance." (§ 649, *supra*.) The propriety of the planning commission's finding on these issues cannot be determined without recourse to the proceedings taken before it "in the manner provided by law" (*Ricciardi* v. *County of Los Angeles, supra,* 115 Cal.App.2d 569, 580) and examination of the evidence there submitted. The validity of section 404 of the ordinance, *supra,* affirming the expiration date of plaintiffs' right to continue the operation of their cement plant in the rezoned district, would necessarily depend on whether the planning commission's action was unreasonable, arbitrary or oppressive in ordering revocation in plaintiffs' case. Under all the circumstances, plaintiffs have an adequate remedy at law for review of the planning commission's proceedings, and therefore they are not entitled to injunctive or declaratory relief. (*North Side etc. Assn.* v. *Hillside etc. Park, supra,* 70 Cal. App.2d 609, 615; *Hostetter* v. *Alderson,* 38 Cal.2d 499, 500 [241 P.2d 230].)

The judgment is reversed.

Gibson, C. J., Edmonds, J., and Traynor, J., concurred.

CARTER, J.—I dissent.

The ordinance in this case changed the zone in which plaintiffs' business (concrete aggregates loading plant) was then established to embrace only "light manufacturing" to which class plaintiffs' business did not belong. As is customary, the ordinance excepted from its operation for a period of 20 years, existing uses such as plaintiffs'. Yet in the next breath it provided that any exception could be revoked if the planning commission found that that could

be done without violating the constitutional rights of the existing user or where the existing use was detrimental to the "public health or safety" or was a "nuisance." For all practical purposes, therefore, no exception was granted for existing uses because the exception could be taken away at any time, and in the case at bar, was taken away from plaintiffs with impunity.

It is settled in this state as elsewhere that a zoning ordinance which requires the discontinuance of nonconforming uses existing when the ordinance was adopted is a deprivation of property without due process of law contrary to the federal and state Constitutions. (*Jones* v. *City of Los Angeles,* 211 Cal. 304 [295 P. 14]; *Beverly Oil Co.* v. *City of Los Angeles,* 40 Cal.2d 552 [254 P.2d 865]; *Wilkins* v. *City of San Bernardino,* 29 Cal.2d 332 [171 P.2d 542]; *Clemons* v. *City of Los Angeles,* 36 Cal.2d 95 [222 P.2d 439]; *Price* v. *Schwafel,* 92 Cal.App.2d 77 [206 P.2d 683]; *Acker* v. *Baldwin,* 18 Cal.2d 341 [115 P.2d 455]; Yokley, Zoning Law & Practice, § 133; 58 Am.Jur., Zoning, § 148; McQuillin, Municipal Corporations (3d ed.), § 25.181.) In *Village of Terrace Park* v. *Errett,* 12 F.2d 240, a zoning ordinance was held invalid which prohibited plaintiff from operating his gravel processing plant which was operating when the ordinance was passed. In *In re Kelso,* 147 Cal. 609 [82 P. 241, 109 Am. St.Rep. 178, 2 L.R.A.N.S. 796], it was held that an ordinance could not validly prohibit the maintenance of a rock quarry in the city. In *Dobbins* v. *Los Angeles,* 195 U.S. 223 [25 S.Ct. 18, 49 L.Ed. 169] (reversing our court's decision in *Dobbins* v. *City of Los Angeles,* 139 Cal. 179 [72 P. 970, 96 Am.St.Rep. 95]) the court held an ordinance unconstitutional which prohibited a gas works as applied to an existing gas works.

As a zoning ordinance which does not exempt existing nonconforming uses is invalid, it necessarily follows that an ordinance, like the one here, which excepts such uses but authorizes a planning commission to revoke those exceptions where the public safety or health is involved, is also invalid. If public health and safety (police power), the basis for the zoning, cannot justify the destruction of existing uses, an administrative agency cannot be given such power. Those uses cannot be eliminated unless they inherently, or as exercised, are nuisances. (*Jones* v. *City of Los Angeles, supra,* 211 Cal. 304.)

Assuming the commission could be given the authority to

determine that an existing nonconforming use was a nuisance, and hence not under the exception for such uses, it is difficult to see how the plaintiffs' business could be a nuisance. It is in an area zoned for light manufacturing. Hence there is no question of disturbing the residents in a residential area. Plaintiffs obtained a permit to conduct its business and it complied with all "smog control and air pollution" ordinances.

In the disposition of the case the majority reverses the judgment granting an injunction in an action for preventive and declaratory relief and in so doing states that plaintiffs cannot review the action of the commission in a proceeding for declaratory relief or injunction. In effect the trial court is told to dismiss the action. Although it is said in *Hostetter* v. *Alderson*, 38 Cal.2d 499 [241 P.2d 230], that a determination by a local administrative agency cannot be reviewed in a declaratory relief action, it has been done (see *Edmonds* v. *County of Los Angeles*, 40 Cal.2d 642 [255 P.2d 772]; *Otis* v. *City of Los Angeles*, 52 Cal.App.2d 605 [126 P.2d 954]; *Hoyt* v. *Board of Civil Service Commrs.*, 21 Cal.2d 399 [132 P.2d 804]; 15 Cal.Jur.2d, Declaratory Relief, § 63; 2 Cal. Jur.2d, Administrative Law, § 199). In any event, the declaratory relief action may be treated as mandamus, a proper remedy for review (*Hostetter* v. *Alderson, supra,* 38 Cal.2d 499; 2 Cal.Jur.2d, Administrative Law, § 200), and it was alleged by plaintiffs that the commission had no competent evidence to prove any cause for revocation of its exemption from the ordinance. This should be pointed out to avoid a dismissal of the action.

I am convinced that the trial court correctly applied the law to the facts of this case, and the judgment should be affirmed.

SHENK, J., and SCHAUER, J.—We dissent.

In our view the opinion prepared for the District Court of Appeal by Justice McComb and concurred in by Presiding Justice Moore and Justice Fox (reported in (Cal.App.) 260 P.2d 811), adequately discusses and correctly resolves the questions presented on this appeal. For the reasons therein stated we would affirm the judgment of the trial court.

Respondents' petition for a rehearing was denied July 21, 1954. Shenk, J., Carter, J., and Schauer, J., were of the opinion that the petition should be granted.